UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
ANGELICA P.,

      Plaintiff,   <u>DECISION AND ORDER</u>
            1:21-CV-09592-GRJ

  v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

  In May of 2019, Plaintiff Angelica P.[1] applied for Supplemental

Security Income Benefits under the Social Security Act. The Commissioner

of Social Security denied the application.  Plaintiff, represented by Ny

Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action

seeking judicial review of the Commissioner's denial of benefits under 42

U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction

of a United States Magistrate Judge. (Docket No. 12).

  This case was referred to the undersigned on October 25, 2022.  The

parties, through counsel, filed a Joint Stipulation in lieu of Motions for

Judgment on the Pleadings under Rule 12 (c) of the Federal Rules of Civil

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Procedure. (Docket No. 23). For the following reasons, Plaintiff is granted

judgment on the pleadings and this matter is remanded for further

proceedings.

## I.  BACKGROUND

### A.    *Administrative Proceedings*

Plaintiff applied for benefits on May 20, 2019, alleging disability

beginning May 1, 1996. (T at 189-92).[2]  Plaintiff's application was denied

initially and on reconsideration.  She requested a hearing before an

Administrative Law Judge ("ALJ").  A hearing was held on August 7, 2020,

before ALJ Flor Suarz. (T at 54). Plaintiff appeared *pro se* and testified. (T

at 67-83).

### B.    *ALJ's Decision*

On May 28, 2021, the ALJ issued a decision denying the application

for benefits. (T at 32-53).  The ALJ found that Plaintiff had not engaged in

substantial gainful activity since May 20, 2019 (the date she applied for

benefits). (T at 37).  The ALJ concluded that Plaintiff's schizophrenia,

anxiety, and type one diabetes were severe impairments as defined under

the Social Security Act. (T at 37).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 13.

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 38).

At step four of the sequential analysis he ALJ determtined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, as defined in 20 CFR 416.967 (c), with the following limitations:

She can never climb ladders, ropes or scaffolds; she can frequently, bilaterally, handle objects and perform gross manipulation (i.e., use the whole hand to seize, hold, grasp, or turn); frequently, bilaterally, finger (i.e., perform fine manipulation of small objects, such as items no smaller than the size of a paper clip); frequently, bilaterally, feel (i.e., use fingertips to feel size, shape, temperature, and texture). (T at 41-42).  The ALJ found Plaintiff limited to occasional exposure to extreme heat, cold, wetness, humidity, bronchial irritants such as noxious fumes, odors, dust and gases, poorly ventilated areas, dangerous moving machinery, and unprotected heights. (T at 41-42).

The ALJ restricted Plaintiff to work in a low stress job, defined as having only occasional changes in the work setting; with only occasional interaction with the public, co-workers, and supervisors; and work that

3

allows her to be off-task 5% of the workday, in addition to regularly scheduled breaks. (T at 42).

The ALJ concluded that Plaintiff could not perform her past relevant work as a day care worker. (T at 48).

However, considering Plaintiff's age (55 on the application date), education (at least high school), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 48).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between May 20, 2019 (the application date) and May 28, 2021 (the date of the ALJ's decision). (T at 49).  On September 22, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on November 19, 2021. (Docket No. 1).  The parties, through counsel, filed a Joint Stipulation in lieu of motions for judgment on the pleadings on December 19, 2022. (Docket No. 23).

## II.  APPLICABLE LAW

*A.    Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises two main arguments in support of her request for

reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ failed to

adequately develop the record and properly assess the evidence.  Second,

Plaintiff contends that the ALJ erred in discounting her credibility.

A.     *Duty to Develop the Record*

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted).

The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

"Proper application" of the duty to develop the record "ensures that the claimant's record is comprehensive, including all relevant treating physician diagnoses and opinions, and requires the ALJ to explain clearly how these opinions relate to the final determination. In this circuit, the rule is robust." *Santiago v. Comm'r of Soc. Sec.*, No. 13-CV-3951(LTS)(SN), 2014 U.S. Dist. LEXIS 96984, 2014 WL 3819304, at *16 (S.D.N.Y. Aug. 4, 2014) (citing *Schaal v. Apfel*, 134 F.3d 496, 503-05 (2d Cir. 1998)).

In the present case, the ALJ's duty was heightened by two factors— Plaintiff's pro se status at the administrative hearing and the fact that Plaintiff alleged disabling mental impairments.

It is well-settled that "[w]hen a claimant properly waives his right to counsel and proceeds pro se, the ALJ's duties are 'heightened.'" *Moron v. Astrue*, 569 F.3d 108, 113 (2d Cir.2009) (citing *Cruz v. Sullivan*, 912 F .2d 8, 11 (2d Cir.1990)). The ALJ is required "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Cruz v. Sullivan*, 912 F.3d 8, 11 (2d Cir.1990)(internal quotation marks omitted).

This Court, in turn, must undertake a "searching investigation of the record" to ensure that the claimant received "a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980) (internal quotation marks omitted).

"The reason for this added duty is obvious: claimants unassisted by skilled counsel are unlikely to call to the ALJ's attention all of the information which the ALJ should consider in evaluating the claim." *Molina v. Colvin*, No. 15-CV-8088 (JLC), 2016 WL 7388374, at *4 (S.D.N.Y. Dec. 20, 2016)(quotation omitted).

In addition, courts have consistently recognized that "an ALJ has a heightened duty to develop the record when a claimant asserts a mental

impairment." *Gabrielsen v. Colvin,* No. 12-CV-5694 KMK PED, 2015 WL 4597548, at *4-5 (S.D.N.Y. July 30, 2015)(collecting cases).

"This 'heightened duty' derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Piscope v. Colvin*, 201 F. Supp. 3d 456, 462-63 (S.D.N.Y. 2016).

Underpinning the heightening of the ALJ's duty is a recognition that the opinions of treating providers are particularly probative in claims involving mental health.  *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations."); *see also Marinez v. Comm'r of Soc. Sec.,* 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017) (noting that treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.") (citing 20 C.F.R. § 416.927(c)(2)).

Although the "treating physician rule" no longer applies, this important principle persists, as the opportunity to observe and treat the claimant constitutes important "support" for a medical opinion under the new medical opinion review standard. *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 U.S. Dist. LEXIS 32884, at *28 (N.D.N.Y. Feb. 22, 2021); *Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 U.S. Dist. LEXIS 19212, at *25-26 (S.D.N.Y. Jan. 29, 2021)("A survey of … cases … show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")(collecting cases).

Here, the ALJ recognized that Plaintiff's schizophrenia and anxiety were severe impairments. (T at 37).  The ALJ found that the impairments were significant enough to limit Plaintiff's ability to perform the mental demands of basic work activity in material respects—e.g. low stress, only occasional interaction with others, must be permitted to be off-task 5% of the workday, in addition to regularly scheduled breaks. (T at 41-42).

Notwithstanding the undisputed, significant nature of Plaintiff's impairments, and her *pro se* status during the administrative hearing, the

ALJ failed to obtain medical opinions from any treating providers.  This was error.

The Commissioner contends that the ALJ satisfied the duty to develop the record by obtaining Plaintiff's psychiatric treatment notes.

However, "an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians." *Skartados v. Comm'r of Soc. Sec*., No. 20-CV-3909 (PKC), 2022 WL 409701, at *4 (E.D.N.Y. Feb. 10, 2022)(citing *Prieto v. Comm'r of Soc. Sec*., No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10–11 (S.D.N.Y. Aug. 6, 2021) (collecting cases)).

"Medical opinions from treating physicians are critical because, beyond simply diagnosing the patient's impairment, they relate the impairment to the patient's functional capacity." *Skartados*, 2022 WL 409701, at *4 (citing *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) ("The medical records discuss her illnesses and suggest treatment for them but offer no insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life.")).

"It is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the treating

physician—what distinguishes him from the examining physician and from the ALJ—is his opportunity to develop an informed *opinion* as to the … status of a patient." *Robins v. Astrue*, No. CV-10-3281 FB, 2011 WL 2446371, at *4 (E.D.N.Y. June 15, 2011)(quoting *Peed v. Sullivan*, 778 F. Supp 1241, 1246 (E.D.N.Y.1991)(emphasis original).

The Commissioner further argues that the record was sufficient to sustain the ALJ's RFC determination, notwithstanding the lack of any opinions from treating providers.  This argument fails for the following reasons.

First, as discussed above, treating provider opinions have particular probative value where, as here, the claimant undoubtedly has significant limitations arising from her mental impairments.

Second, and most notably, the medical opinion evidence in the record was conflicting, thus making it all the more important that the ALJ seek the input of treating providers.

Dr. Joseph Coleman performed a consultative psychiatric evaluation in July of 2019.  He diagnosed unspecified schizophrenia spectrum and other psychotic disorder (controlled with medication) and unspecified anxiety disorder. (T at 470).  Dr. Coleman indicated that the results of his examination appeared to be consistent with psychiatric and cognitive

problems, but he found that the problems did not "appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis." (T at 470).  Dr. Coleman assessed mild limitation in Plaintiff's ability to perform many of the mental demands of basic work activity. (T at 470).

Dr. K. Lieber-Diaz, a non-examining State Agency review physician, assessed moderate limitation in Plaintiff's ability to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and set realistic goals or make plans independently of others. (T at 93-94).

Dr. S. Bhutwala, another State Agency review physician, opined that Plaintiff had moderate limitation in her ability to perform some of the mental demands of basic work activity, but concluded that she was "capable of unskilled work on a sustained basis." (T at 105, 107-108).

The ALJ did not find any of the medical opinions of record fully persuasive.  The ALJ believed Dr. Coleman underestimated Plaintiff's limitations in interacting with others and adapting/managing herself. (T at 47).  The ALJ concluded that the State Agency review consultants overestimated Plaintiff's degree of impairment related to maintaining

concentration, persistence, and pace, but underestimated her limitations regarding social interaction. (T at 46).

"Given the conflicts in the medical evidence, and in light of the ALJ's decision to grant none of the medical opinions full weight, the record calls for enhancement through inquiries to the treating physicians or consultants that might shed light on the import of their opinions and the conflicts the ALJ identified." *Piscope*, 201 F. Supp. 3d at 464; *see also Skartados*, 2022 WL 409701, at *6-8. Therefore, this matter must be remanded for further development of the record.

B.    Remand

"Whether the ALJ has met his duty to develop the record is a threshold question." *Hooper v. Colvin*, No. 15-CV-6646 (JLC), 2016 WL 4154701, at *7 (S.D.N.Y. Aug. 5, 2016). "Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." *Id*. (internal quotation marks and citations omitted). "Remand is appropriate where this duty is not discharged." *Id*. (citing Moran v. Astrue, 569 F.3d 108, 114-15 (2d Cir. 2009)).

For the reasons outlined above, the Court finds a remand is required for further development of the record.  In particular, the ALJ should obtain functional assessments from Plaintiff's treating providers and then re-assess Plaintiff's RFC in light of any additional findings regarding the nature and extent of her impairments.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff is GRANTED judgment on the pleadings and this case is REMANDED for further proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment and then close the file.

Dated: March 6, 2023          *s / Gary R. Jones*
                              GARY R. JONES
                              United States Magistrate Judge